
Case 14-02239    Filed 09/02/15    Doc 53

FILED

SEP 2 2015

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re

VOLODYMYR SEMENYUK,

      Debtor.

_____

ALEXANDR ALEXANDROV,

      Plaintiff,

vs.

VOLODYMYR SEMENYUK,

      Defendant.

_____

Case No. 14-26460-A-7

Adv. No. 14-2239

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In this case, plaintiff Alexandr Alexandrov maintains that defendant Volodymyr Semenyuk falsely represented his intention to sell him two operational commercial vehicles, a truck and a trailer, for $20,000.  The plaintiff asserts that he paid $20,000 to the defendant but the vehicles were not operational and, whether or not operational, the defendant never transferred title to him.  After failing to transfer the vehicles, the defendant

agreed to repay the $20,000 to the plaintiff and he signed a series of short term notes to that effect. The defendant, however, failed to repay the $20,000 and then filed a chapter 7 bankruptcy petition.

Based on these findings of fact and conclusions of law, the court will enter a judgment in favor of the plaintiff, awarding him $20,035, interest, costs, and a declaration that the judgment is made nondischargeable by 11 U.S.C. § 523(a)(2)(A).

### Findings of Fact

1. In March 2012, the plaintiff offered to buy a commercial truck and trailer from the defendant for $20,000. When the offer was made, the defendant admits that he and his trucking business were in financial difficulty. There is no convincing evidence that the plaintiff knew of these financial difficulties.

2. The defendant agreed to the deal, promising that the vehicles would be operational and free of material defects. The plaintiff gave the defendant $20,000 on or about March 22, 2012. The plaintiff, however, did not receive the vehicles.

3. As to the title to the vehicles, at the time of the sale, the defendant gave to the plaintiff a certificate of title for each vehicle. However, the titles given to the plaintiff were insufficient to transfer title to him. The defendant had purchased each vehicle from a third party. He held endorsed certificates of title from these third parties but the defendant had never applied to the California Department of Motor Vehicles (DMV) to transfer the titles into his name. See Exhibits 1 and

2. When he later sold the vehicles to the plaintiff, the defendant gave the plaintiff the endorsed certificates of title from the third parties. These, however, transferred title to the defendant, not to the plaintiff.

4. With just this paperwork, DMV refused to transfer the titles to the plaintiff. In order to do so, the defendant first had to transfer title into his name and then transfer the titles to the plaintiff. The defendant never transferred clear titles to the plaintiff.

5. As to the condition of the vehicles, the plaintiff discovered that they had numerous defects and were in need of repairs. The defendant promised to make the repairs and then deliver possession to the plaintiff. While waiting for the defendant to repair the vehicles, the defendant removed the vehicles from his business parking lot, leaving the plaintiff without the vehicles.

6. The plaintiff made repeated attempts between the end of March 2012 and April 2013 to get the plaintiff to repair the vehicles, deliver them to him, and to obtain clear titles. However, the defendant hid from the plaintiff and failed to rectify the situation. In March 2013, the defendant sold the vehicles a second time to another person. See Statement of Financial Affairs, Question 10(a), filed June 19, 2014, Docket 1, Case No. 14-26460.[1] The defendant sold the vehicles sold for a total $13,600.

---

[1] The court takes judicial notice of the Statement of Financial Affairs which contains these admissions. Fed. R. Evid. 201.

3

7.  After persistent but unsuccessful efforts by the plaintiff to get the defendant either to honor their deal or to repay his $20,000, the defendant executed a promissory note on April 22, 2013 agreeing to repay plaintiff in 30 days. <u>See</u> Exhibit H. The defendant failed to pay the plaintiff in 30 days or ever.

8.  The first note was succeeded by a series of equally worthless notes. <u>See</u> Exhibits B through G. When the defendant failed to honor a note, and when the plaintiff was able to find the defendant, the defendant agreed to sign a new note. Starting in June 2013, the defendant also gave the plaintiff a series of checks. The first of these checks, in the sum of $1,600, was dishonored by the defendant's bank. The plaintiff's bank charged him $35 as a result. Thereafter, before depositing the defendant's four other checks, the plaintiff first contacted the defendant's bank to verify there were sufficient funds to cover the checks. Because he was told there were insufficient funds, he did not deposit the checks.

9.  Finally, in June 2014, the plaintiff filed suit in state court. Nine days later, the defendant filed his chapter 7 petition.

10. The defendant's response to this proceeding has been to deny that he sold the vehicles to the plaintiff. Instead, the defendant asserts that the $20,000 was an unsecured loan. The court finds that the defendant's testimony and other evidence offered in support of this defense lacks credibility.

   a.  The defendant's theory of the case is contradicted by
       the fact that he gave the plaintiff certificates of title

for the vehicles at the inception of the deal, albeit certificates insufficient to transfer title. The defendant deals with this contradiction by asserting that the plaintiff's stole the title certificates from his office. However, there is no corroboration for this, such as a police report that was placed into evidence. The court believes the plaintiff's testimony that he was given the certificates by the defendant in March 2012.

b. The defendant also argues that the plaintiff should have known that the defendant could not sell him the vehicles because he did not own them. In fact, the defendant did own the vehicles. The former owners had signed and delivered certificates of title to the defendant. The defendant, however, had failed to file those endorsed certificates with DMV and have title registered in his name. All the defendant had to do was file certificates, obtain new title certificates, and then endorse them over to the plaintiff. The defendant did just this in March 2013 when he sold the vehicles a second time to someone else. He could have done the same for the plaintiff but did not.

c. While the series of promissory notes might suggest a loan, these notes were not contemporaneous with the March 2012 transaction. The first note was executed on April 22, 2013, more than one year after the fact. This time gap is consistent with the plaintiff's version of the case – the notes were offered to the plaintiff only after the defendant failed to make good on the sale of the vehicles.

d. Further, if the plaintiff was interested in loaning

money to the defendant as an investment, one would expect the notes to include an interest rate. The notes make no mention of the return the plaintiff would receive on his investment. The court finds that the notes represented the plaintiff's effort to make the best of a bad situation and get his money back from the defendant.

e. Finally, the court does not believe the defendant's testimony that he paid the plaintiff 3% a month on the $20,000 from March 2012 through February 2014. There is no documentary evidence of such payments and, even if the payments were in cash as claimed by the defendant, at a minimum he should have records showing the withdrawal of these sums from his bank accounts. Nothing was produced. And, given usury limits one would expect that a 36% annual interest rate would prompt the scheduling of the plaintiff's claim as disputed. Yet, Schedule F does not list the claim as disputed, contingent or unliquidated.[2]

11. Ultimately, the fact that the defendant admits he was in financial difficulty at the inception of the deal but denies he ever agreed to sell the vehicles to the plaintiff, convinces the court that the defendant set out to defraud the plaintiff. He intended to take the plaintiff's $20,000 and not to transfer the vehicles to him.

## Conclusions of Law

---

[2] The court takes judicial notice of Schedule F. Fed. R. Evid. 201.

6

1. To the extent any of the foregoing findings of fact are conclusions of law, they are incorporated by reference as conclusions of law.

2. This court is the proper venue for this proceeding. See 28 U.S.C. § 1409.

3. This matter was tried before the court sitting without a jury. The claim concerns the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(2)(A). This is a matter within the court's core jurisdiction. See 28 U.S.C. § 157(b)(2)(I). The court may enter a final order. Stern v. Marshal, 131 S. Ct. 2594 (2011) and Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.), 134 S. Ct. 2165 (2014).

4. In the Ninth Circuit, there is a five-part test for determining when a debt is nondischargeable under section 523(a)(2)(A):

> A creditor must show that (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

Cowan v. Kennedy (In re Kennedy), 108 F.3d 1015, 1018 n.2 (9th Cir. 1997); Kirsh v. Kirsh (In re Kirsh), 973 F.2d 1454, 1457 (9th Cir. 1992).

5. In Field v. Mans, 516 U.S. 59, 116 S.Ct. 437 (1995), the Supreme Court determined that the term "actual fraud" in section 523(a)(2)(A) incorporated common law elements of fraud into nondischargeability cases. Citibank (South Dakota) v. Eashai (In re Eashai), 87 F.3d 1082, 1087 (9th Cir. 1995).

Actual fraud includes circumstances where a debtor incurs debts "with no intention of paying for same." Karelin v. Bank of America Nat'l Trust and Sav. Assn. (In re Karelin), 109 B.R. 943, 947 (9th Cir. BAP 1990).

6. A fraudulent misrepresentation may be express or implied. An implied misrepresentation arises from "conduct intended to create and foster a false impression." Smith v. Young (In re Young), 208 B.R. 189, 199 (Bankr. S.D. Cal. 1997).[3] Failure to disclose a material fact can constitute a misrepresentation for nondischargeability purposes. Texas Venture Partners v. Christian (In re Christian), 111 B.R. 118, 122 (Bankr. W.D. Tex. 1989).

7. The court may infer the existence of the debtor's intent not to perform when the facts and circumstances of the case present a picture of deceptive conduct by the debtor. Eashai, 87 F.3d at 1087. This approach to determining if a debtor has engaged in actual fraud is known as the "totality of the circumstances" test. Id. at 1087; Barrack, 217 B.R. at 607.

8. The totality of the circumstances, as summarized above and particularly as set out paragraphs 3 through 10(a)-(e) and 11, convince the court that the defendant promised to deliver possession and title to two operational vehicles to the plaintiff but never intended fulfill that promise. The promise was made to induce the plaintiff to pay $20,000 to the defendant, which the plaintiff did to his detriment.

---

[3] Young was overruled on other grounds. See Cote v. Smith (In re Cote), 229 B.R. 15, 17 (9th Cir. BAP 1998).

9. The plaintiff's relied on the defendant's promise to sell him the vehicles and his reliance was justifiable. A plaintiff justifiably relies on a representation of intent to perform a contract as long as there are no apparent red flags suggesting that the defendant will not abide by his promise. Field v. Mans, 116 S.Ct. 437 (1995); In re Anastas, 94 F.3d 1280, 1286 (9th Cir. 1996). In this case, there were no red flags at the inception of the deal. To the extent it might be argued that the plaintiff should have been alerted to a problem by the certificates of title given to him by the defendant, the plaintiff is a Russian immigrant was ability to speak and read English is marginal at best, and the defendant was the expert – he operated a trucking business. And, the fact that both parties are Russian immigrants who were acquainted with one another prior to the transaction, reasonably prompted the plaintiff to trust the defendant.

10. As a proximate result of the defendant's misrepresentation, the plaintiff has been damaged in the sum of $20,000, plus $35 in bank charges.

A judgment shall be entered in accord with these findings of fact and conclusions of law.

Dated: 2 Sept 2015

By the Court

_____
Michael S. McManus, Judge
United States Bankruptcy Court

9